UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

RONALD LAMONT DAVIS,

        Plaintiff,

v.

DENNY MILLER et al.,

        Defendants.
_____/

Case No. 2:19-cv-128

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith and Kinasz.

**Discussion**

    **I.**    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about which he

complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan. Plaintiff sues KCF Nurses Denny Miller and Tristina M. Smith and KCF Corrections Officer Unknown Kinasz.

Plaintiff has been incarcerated for decades. He is imprisoned by the MDOC for life following his conviction for murder. Plaintiff alleges that since 2005, he has suffered "back pain with radiculopathy (a nerve root disorder)[.]" (Compl., ECF No. 1, PageID.3.) The MDOC's medical staff has classified Plaintiff as a chronic care patient. (*Id.*)

On July 18, 2018, Plaintiff was suffering extreme pain in his lower back that was compromising the stability of his left leg. That morning he encountered Defendant Smith at the medication window. He described his pain to her. She said she could not do anything about it at that time and that he should have his unit officer call health services.

Plaintiff then went to the unit officer, Defendant Kinasz, and asked him to call health services on Plaintiff's behalf. Defendant Kinasz complied immediately. He reached Defendant Miller and let Plaintiff speak to Defendant Miller. Plaintiff described his symptoms which included excruciating pain in his lower back and hip region, numbness within his penis for long periods of time alternating with needle-poke like pains, shooting pains up his rectum and buttocks, violent muscle spasms, and a burning stinging sensation traveling down his left leg that caused the leg to "give out[.]" (*Id.*, PageID.5.) Plaintiff asked for pain medication.

Miller noted that Plaintiff's symptoms were consistent with chronic back pain. He refused any medication and refused to direct Kinasz to bring Plaintiff to health services to see someone else. Miller directed Plaintiff to submit a medical kite, pay the co-pay, and wait to receive a call-out.

After Miller hung-up, Plaintiff asked Kinasz to bring the issue to his shift commander. Kinasz declined, suggesting that Plaintiff complete a medical kite as directed by Miller. Plaintiff complied, but he was not called out that day.

The next day, July 19, 2018, Plaintiff again complained to Nurse Smith when it was his turn at the medication window. She again told Plaintiff there was nothing she could do until she finished passing out medications and that, if he wanted relief sooner, he would have to have his unit officer call health services. She acknowledged that he needed medical attention.

Plaintiff returned to his unit and asked Kinasz to call health services as Nurse Smith had instructed. Kinasz called health services and put Plaintiff on the phone to speak with Miller. Miller again told Plaintiff to put in a medical kite.

Plaintiff, who was by that time noticeably limping from the pain, asked Prisoner Counselor Mortensen to intervene. Mortenson called health services and spoke with Miller. Miller said that he had still not seen a medical kite from Plaintiff and that Plaintiff could not see anyone until he submitted a medical kite. Plaintiff argued that he had submitted a medical kite. Miller accused Plaintiff of lying to get out of the co-pay.

At Mortenson's instruction, Plaintiff filled out another medical kite. Mortenson reviewed the kite and then told Plaintiff to submit it to health services. Plaintiff was still not called out that day.

The next day, Plaintiff went to the prison's control center—without permission—and spoke to a sergeant. The sergeant spoke with health services. He informed Plaintiff that health services had received the kite and that Plaintiff was scheduled to be seen on Monday, July 23, 2018. Plaintiff asked the sergeant to force health services to see Plaintiff sooner. The sergeant

3

refused and told Plaintiff to return to his unit or he would receive a misconduct for coming to the control center without permission.

Plaintiff returned to his unit. His condition deteriorated. At 3:30 the next morning, his left leg gave out. He fell and hit his head on a metal locker. He was taken to the hospital for emergency treatment. The doctor there recommended that Plaintiff see a neurologist as soon as possible.

Plaintiff claims that Defendants' refusals to provide treatment resulted in significant pain and that because of the delay in treatment, he must now undergo corrective surgery. Plaintiff seeks hundreds of thousands of dollars in compensatory and punitive damages for Defendants' deliberate indifference to Plaintiff's serious medical needs.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendants' conduct violates the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

5

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Plaintiff's allegations regarding his symptoms are sufficient to state the objective component of his claim.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Stated differently, the official must both know of the risk and disregard it. *Id*.

Plaintiff's allegations fail to show that Nurse Smith was deliberately indifferent to Plaintiff's serious medical needs. Indeed, Plaintiff alleges that she was aware that Plaintiff needed medical attention. The fact that she was not able to address Plaintiff's needs because she was then addressing the needs of other patients in the medication line does not support Plaintiff's conclusory

6

allegation that she was deliberately indifferent to Plaintiff. Moreover, Nurse Smith, recognizing that she was unable to address Plaintiff's needs, told him what he needed to do to promptly obtain care: return to his unit and have a unit officer contact health services. Because Plaintiff has failed to allege facts that support an inference that Defendant Smith was deliberately indifferent to Plaintiff's needs, his Eighth Amendment claim against her is properly dismissed.

Plaintiff's allegations likewise fail to show that Defendant Kinasz disregarded the risk of harm to Plaintiff. When Plaintiff asked Kinasz to contact health services, Kinasz did so "immediately[.]" (Compl., ECF No. 1, PageID.4.) Kinasz did not attempt to filter Plaintiff's description of his symptoms, he put Plaintiff on the line with Defendant Miller, a healthcare professional. Through that exchange, Kinasz learned that Plaintiff had chronic back pain. He also learned that it was Miller's opinion that Plaintiff did not need immediate attention but that he should take a pain reliever and submit a medical kite. Although Plaintiff wanted more, Kinasz suggested that he follow Nurse Miller's instructions.

When the scenario played out again the next day, Kinasz again called health services on Plaintiff's behalf. Miller said Plaintiff had not followed the instruction to submit a kite. When that result was not to Plaintiff's satisfaction, Plaintiff turned to Prisoner Counselor Mortenson and Defendant Kinasz's involvement was complete.

Both times that Plaintiff's risk of harm was brought to Kinasz's attention, he promptly contacted health services. He then encouraged Plaintiff to follow the course of action recommended by a healthcare professional. Kinasz did not simply disregard Plaintiff's plight. Certainly, Kinasz could have done more. He could have brought the matter to a shift commander. He could have brought Plaintiff to health services against the advice of Nurse Miller. But the Eighth Amendment only requires that one who is aware of a risk of serious harm not disregard that

7

risk. Plaintiff has failed to allege facts that support an inference that Defendant Kinasz disregarded the risk to Plaintiff. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendant Kinasz.

Plaintiff's allegations with respect to Defendant Miller support an inference that Defendant Miller was aware of the risk of harm to Plaintiff and that Miller, by delaying any treatment for days, disregarded that risk. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Miller may proceed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith and Kinasz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claim against Defendant Miller remain in the case.

An order consistent with this opinion will be entered.


Dated:  August 9, 2019                         /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge